IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CLIFTON ORLANDO SOLOMON                                                    PLAINTIFF

v.                               Civil No. 4:16-cv-04038

STEVEN KING                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This is a civil rights action filed *pro se* by Plaintiff, Clifton Orlando Solomon, under 42 U.S.C. § 1983. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 29). Pursuant to this authority, I held a bench trial on July 20, 2018, and now issue the following findings of fact and conclusion of law.

### I. BACKROUND

Plaintiff filed his original Complaint on April 22, 2016, against Defendants Southern Health Partners Inc., Steven King, and Brittany Cooksey alleging he was denied medical attention, overcharged for co-pay amounts, and retaliated against while he was incarcerated at the Miller County Detention Center ("MCDC"). (ECF No. 1). In response to this Court's order, on June 24, 2016, Plaintiff filed an Amended Complaint to clarify the claims against each Defendant. (ECF No. 13). At the time of the events in question, Defendant Southern Health Partners, Inc. was under contract with Miller County, Arkansas, to provide health care services to inmates housed at the MCDC. Defendants King and Cooksey were employees of Defendant Southern Health Partners, Inc. while Plaintiff was held at the MCDC.

On November 2, 2017, the Court entered an order granting in part and denying in part Defendants' motion for summary judgment. (ECF No. 56). The order dismissed all claims against

1

Defendants Southern Health Partners, Inc. and Brittany Cooksey and the personal capacity claim for retaliation against Defendant King. The only claim remaining for trial was Plaintiff's personal capacity claim against Defendant King for denial of medical care.

At the bench trial, the testimony of the following witnesses was heard: (1) Captain Golden Adams; (2) Brittany Cooksey; (3) Defendant Steven King; and (4) Plaintiff Clifton Solomon.

Plaintiff offered the following Exhibits: (1) Consent for Treatment dated March 14, 2016; (2) Medical History – Physical Assessment dated March 27, 2016; (3) Medical Request #815,864 dated March 31, 2016; (4) Defendant King's Responses to Interrogatories; (5) MCDC's Inmate Handbook; (6) ADC Health Service Request Form; (7) Grievance #903,232 and Refusal of Medical Treatment dated May 13, 2016; (8) Medical Request #814,446 dated March 3/30/2016; (9) Medical Request #902,509 and Patient Clinical Data Form dated May 12, 2016; (10) Grievance #815, 448 dated March 31, 2016; and (11) Excerpts from the Miller County Detention Center Law Library. Defense counsel objected to the handwritten comments on Plaintiff's exhibits. The Court acknowledged the objection and agreed to admit Plaintiff's Exhibits 1 – 11. The Court assigned no weight to the handwritten comments on Plaintiff's exhibits.

Defendant offered the following Exhibits: (1) Plaintiff's Medical Records from the MCDC for the time period of March 14, 2016, through May 13, 2016 (Labeled as Ex. 1-1 through 1-10) and Plaintiff's Medical Records from June 2, 2017 (Ex. 1-13) and June 6, 2017 (Ex. 1-11, 1-12); and (2) Plaintiff's grievances and medical requests filed with the MCDC between March 2016 and May 2016 (Labeled as Ex. 2-1 through 2-16). Defendant's exhibits were admitted without objection.

## II. FINDINGS OF FACT

The following is a summary of the witnesses' testimony and the Court's findings of fact:

**Captain Golden Adams**

Captain Adams was employed with the MCDC in the spring of 2016 and is still employed there today. He testified that MCDC officers are not always present when inmates are evaluated by medical personnel but he remembers Plaintiff being called to his office at the request of Defendant because Plaintiff had used profanity in one of his medical requests. Plaintiff was not issued any disciplinary based on the wording of the medical request. When asked if he thought Plaintiff had adequately described his medical condition in Medical Request #815, 864 (Pl. Ex. 3), he stated he thought Plaintiff could have described the condition using words other than "shit" but that he did think Plaintiff had described his condition and directed the medical request to Defendant King.

I found Captain Adams to be credible.

**Brittany Cooksey**

Ms. Cooksey was employed as a nurse by Southern Health Partners, Inc. during the spring of 2016, but is no longer employed there. As part of her duties as a nurse, Cooksey performed intake assessments of the MCDC's inmates and from time to time conducted sick calls. She testified when an inmate submitted a sick call medical staff would typically call the inmate in and access the situation. Cooksey recalls conducting Plaintiff's initial medical examination on March 27, 2016. During this examination Plaintiff indicated he did not have a serious medical condition that required attention. However, she testified Plaintiff did mention he had occasional bleeding when having bowel movements. Cooksey testified that she offered Plaintiff a stool softener that day but he refused. She also testified she told Plaintiff he would need to submit a sick call if he continued to have problems

with bleeding during bowel movements. At the conclusion of the assessment, Cooksey documented Plaintiff's medical history and started a medical file for Plaintiff.

Cooksey also testified physicians are not required to be present during initial examinations of inmates or sick calls as long as a physician is available for consultation with the medical team. Cooksey testified she did not discuss any of Plaintiff's medical history with Defendant after reviewing Plaintiff's intake screening information and conducting his medical exam on March 27, 2016, because there were no medical issues which needed to be brought to Defendant's attention.

I found Ms. Cooksey to be credible.

**Defendant Steven King**

Defendant was employed by Southern Health Partners, Inc. as the Medical Team Supervisor and Head Nurse at the MCDC during the spring of 2016. He is still employed in this capacity today. Defendant testified inmates are required to first place a health services request, also referred to as sick call, *via* the jail's kiosk system before they will be seen by a nurse. Defendant stated the MCDC may have up to three-hundred inmates at any given time and therefore it is important for each inmate to provide a specific description of their medical conditions so the medical team can assess which requests are the most critical and need immediate attention.

Defendant testified Plaintiff made his first medical request using the jail kiosk system on March 30, 2016, stating: "When I sam the nures…I let her know about a problem that I was haveing which is a medical problem., which means that medcial has been informed properly., so what am I to ! no-one has seen me about this problem…I have not got any response!!" (Def. Ex. 2-1). On March 31, 2017, Defendant responded stating "This is your first message to medical, so you can quit trying to play games with that 'I have received no response.' If you have a problem you want to see the nurse about, please submit a sick call and you will be called down to the infirmary to be seen." *Id.*

4

Defendant testified Plaintiff submitted multiple kiosk entries later that day. One entry submitted as a grievance states "this is for medical. I was called into medcial to see the Nuers and while at the Nuers I reporyed to the nuers thah I had blood in my shit. With all do respect. She being the Max-end nuers yesterday 3-30-16 I spoke with her she said that she would report it to the head Nuers that head Nuers response ws stop playing games. But being the point that I properly reported when interviwed..I do not have to file out a sick call. It is my right to be treated but I have beed denied medical treatment. (Def. Ex. 2-3).[1] Defendant stated Plaintiff submitted a medical request on March 31, 2016, which reads "Just got using the bathroom same blood in my shit. With all due respect. That I reported to your staff this pass weekend in an interview…this is the 2nd proper reported medical problem by Clifton O. Solomon..You have been properly informed due to the pass reported peoblem in interview." (Def. Ex. 2-8). Defendant responded to the request the same day stating "This message will not be read in full due to the use of profanity. Please resubmit your complaint without the use of profanity." *Id.*

Defendant testified he pulled Plaintiff's medical file on or about March 31, 2016, and noted Plaintiff had indicated he had no current serious medical problems and only had occasional blood in his bowel movements. He testified he believed this condition was not something that needed immediate attention. Defendant admitted he had contacted Captain Adams to discuss Plaintiff's submission of a medical request containing profanity and acknowledged Plaintiff was not disciplined for the language in the medical request.

Defendant testified Plaintiff submitted a medical request asking to be seen by a physician on May 12, 2016, and indicated he did not want to see Defendant for his medical condition because Plaintiff had filed the instant lawsuit on April 22, 2016. Defendant responded to Plaintiff explaining

---

[1] It does not appear this grievance was forwarded to Defendant until approximately two weeks after it was submitted. Grievances are typically reviewed by the MCDC staff whereas medical requests are sent directly to medical.

he could not see a doctor without first being seen by a nurse. Defendant attempted to see Plaintiff on May 13, 2016, but Plaintiff refused to see him. Defendant testified he was not aware Plaintiff had filed a lawsuit against him at that time and it is policy that inmates must first be seen by a nurse before being seen by a physician. Defendant stated Plaintiff was not treated any differently than other inmates and he did not consider Plaintiff's occasional bleeding during bowel movements to be an emergency situation needing immediate medical attention.

I found Defendant King to be credible.

**Plaintiff Clifton Solomon**

Plaintiff testified he was booked into the MCDC on March 14, 2016, and underwent a physical and mental health screening by an MCDC intake officer the same day. During this screening, when asked if he had a serious medical condition that may require attention while at the MCDC, Plaintiff circled the word "no". On March 27, 2016, Plaintiff underwent a history and physical assessment performed by Cooksey. During this examination Plaintiff informed Cooksey he had "occasional bleeding when having a BM." (Def. Ex. 1-6). Plaintiff testified Cooksey told him she would pass along the information relating to the occasional bleeding to Defendant. Plaintiff denies Cooksey ever offered him a stool softener that day. He testified he never had bleeding during bowel movements before coming to the MCDC and he did not know at that time he had hemorrhoids.

Plaintiff testified he submitted a medical request on March 31, 2016, explaining he had just used the bathroom and found "blood in my shit". He stated Defendant refused to read his medical request because Defendant thought Plaintiff had used profanity. He stated Defendant then called him in to Captain Adams' office to be disciplined. During the first week of April 2016, Plaintiff filed six grievances. Each grievance claims the MCDC medical staff refused to see him for a "medical problem" even though he had informed them about the problem during his "medical interview". On

May 12, 2016, Plaintiff filed another medical request stating "With all due respect to the medical team I am requesting to see a medical Dr. because I do not feel comfortable with S. King due to the fact that I have filed a 1983 Complint. Civil Action # 16-4038. If you can refer me to a Dr. that can help me I will be happy to fill out any form so that I may be seen respectful submitted C. Solomon." (Def. Ex. 2-16). Defendant responded to Plaintiff's medical request the next morning as follows: "You will not see the doctor without first being seen during nurse sick call. Please be more specific about what your complaint is (what is ailing you, what you need to be seen for) and we'll get you down here for a sick call." *Id.* Defendant King attempted to see Plaintiff the following day during sick call but Plaintiff refused to see him. Defendant King then filled out a Refusal of Medical Treatment form which Plaintiff refused to sign. (Def. Ex. 1-10).

Plaintiff did not file any additional medical requests after refusing to be evaluated and treated by Defendant on May 13, 2016. Plaintiff was transferred to the Arkansas Department of Correction ("ADC") shortly thereafter where he was examined and treated for hemorrhoids. Plaintiff testified he is still struggling with hemorrhoids today and is being treated at the MCDC for this condition with various creams. He testified the hemorrhoids are uncomfortable and at times he has difficulty sitting without a cushion.

I found Plaintiff's testimony to be factually credible.

### III. CONCLUSIONS OF LAW

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"

*Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

"'To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk.' Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it." *Vaughn v. Green County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006), quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. *See Farmer*, 511 U.S. at 842. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may be held liable for deliberate indifference. *See id*, at 847. To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). The determination that a medical need is objectively serious is a factual finding. *See Jones v. Minnesota Department of Corrections*, 512 F.3d 478, 482 (8th Cir. 2008) citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Plaintiff first reported blood in his stool to Cooksey at the MCDC on March 27, 2016. At that time Plaintiff had not been diagnosed by a physician as requiring treatment for this condition. In fact,

Plaintiff testified he had never had blood in his stool prior to being booked into the MCDC in March of 2016. The question then becomes whether Plaintiff's condition was so obvious even a layperson would easily recognize the necessity for a doctor's attention.

A prison official's background knowledge of the particular inmate's medical history is part of the analysis in determining whether a medical need is sufficiently obvious to a layperson. *See Roberson v. Bradshaw*, 198 F.3d 645, 647-48 (8th Cir. 1999) (describing the deputy's knowledge of inmate's diabetes and complaints in determining whether inmate suffered from medical condition obvious to a lay person); *Rahija*, 114 F.3d at 784-85 (discussing inmate's medical records which indicated previous rapid delivery in finding it would have been obvious to a layperson that inmate required medical attention for pre-term labor). In both *Roberson* and *Rahija*, the inmates exhibited physical symptoms related to known medical issues or to complaints of pain which warranted a finding that the particular medical need was sufficiently obvious.

Here, while Defendant refused to act on the medical request which "contained profanity" he did in fact pull Plaintiffs medical file that very day to review.[2] He first became aware of Plaintiff's complaint regarding occasional bleeding when he pulled Plaintiff's medical file on March 31, 2016. The Eighth Circuit has treated this condition as one requiring medical attention only when the parties have agreed to treat it as such. *See Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997). Defendant testified he did not consider occasional bleeding during bowel movements as a serious medical condition primarily because Plaintiff had indicated on his screening and intake questionnaire he did not suffer from any serious medical conditions that needed to be treated while he was at the MCDC

---

[2] While the court is bothered by Defendant's refusal to read and accept one of Plaintiff's medical requests because he interpreted the request as "containing profanity," the record reflects each party played word games with each other on several occasions. The Court believes having a blanket rule that medical requests can be ignored or denied because a request contains profanity is unwise and potentially dangerous. Instead, it appears to this Court, the better practice would be for medical personnel to review and determine whether a medical request warrants immediate attention and leave the issue of whether an inmate has violated a disciplinary rule, by using profanity, to the correctional officers charged with such at the facility.

and he claimed only to have "occasional" bleeding. In addition, there is no evidence to suggest Plaintiff complained of any pain in connection with the occasional blood in his stools between March and May of 2016.

Although the Court treated Plaintiff's medical need as a serious medical condition at the summary judgment stage in order to give him the benefit of all factual inferences, after hearing the testimony of the witnesses at trial, the Court is convinced Plaintiff's "occasional" bleeding with bowel movements was not a medical need which was so obvious a layperson would easily recognize the necessity for a doctor's attention.

Further, Plaintiff's grievances and medical requests filed during March and April of 2016 indicate he was more concerned with creating a paper trail to support a 1983 claim than he was with his medical issues. Then on May 12, 2016, Plaintiff filed a medical request asking to see a medical doctor claiming he did not feel comfortable seeing Defendant because Plaintiff had filed a 1983 action against him. Plaintiff did not specify the nature of his medical issue in this request. When Defendant attempted to see Plaintiff the following day during sick call, Plaintiff refused to be seen. Plaintiff's refusal to be evaluated by Defendant on May 13, 2016, undermines his claim that he was suffering from a serious medical need. Plaintiff also testified he was diagnosed with hemorrhoids upon his transfer to the Arkansas Department of Correction in May 2016. He was treated with over the counter stool softeners and anti-hemorrhoid cream. He has continued this type treatment through the date of the trial. Plaintiff has required no invasive treatment or surgery for his hemorrhoid condition. Because Plaintiff did not suffer from an objectively serious medical need his claim against Defendant for denial of medical care must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant is entitled to judgment and Plaintiff's claim for denial of medical care against Steven King is hereby **DISMISSED WITH PREJUDICE.** A separate judgment in accordance with this opinion will be entered.

**IT IS SO ORDERED** this 31st day of July 2018.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE